In the Matter of Scott Matthew GARZA.

No. 07–98–0039–CV.

Court of Appeals of Texas,
Amarillo.

Dec. 31, 1998.

Bonita L. Gunden, Amarillo, for appellant.

Todd Alvey Gray County Attorney, Pampa, for appellee.

Before DODSON and QUINN, JJ. and REYNOLDS, Senior Justice.*

BRIAN QUINN, Justice.

Scott Matthew Garza (Scott), a juvenile, appeals his adjudication of guilt for the offense of intentionally and knowingly operating a motor vehicle without the effective consent of the owner. The first of his two points concerns the legal and factual sufficiency of the evidence underlying the determination that he engaged in delinquent conduct. The second questions whether "evidence was insufficient to corroborate the accomplice witness testimony."[1] We reverse.[2]

### Background

In the early morning of June 22, 1997, Scott and four friends (Scott and two others being juveniles) were detained by an officer

---

* Charles L. Reynolds, Chief Justice (Ret.), Seventh Court of Appeals, sitting by assignment.

1. The State did not favor us with an appellate brief responding to Scott's assertions.

2. Oral argument would not materially aid us in the disposition of this appeal. Consequently, we render our decision on the briefs as submitted. TEX.R.APP. P. 2(b).

of the Pampa Police Department for a reason not set forth in the record.[3] The individuals were in possession of a 1995 Pontiac registered in the name of Mr. C.F. Mickeal (Mickeal), Scott's maternal grandfather. Shortly thereafter, officer Fawnswa Burrows of the Pampa Police Department arrived on the scene. Although the individuals were detained, no Miranda warnings were given nor investigative inquiries made. Officer Burrows then escorted the individuals to the police station where their parents were contacted and instructed to collect them.

Upon arrival at the station, Scott allegedly told officer Burrows that he had driven the automobile and that it belonged to his mother, Mrs. Diana Garza. When these and other statements were made, however, he had not been read his Miranda rights. Moreover, Burrows later admitted that although Scott was not under arrest, he was nevertheless prohibited from leaving the police station.[4]

Scott's incriminating statements were then relayed to Albert Nichols, a juvenile probation officer who had been summoned to the station. In turn, Nichols related them to Scott's parents upon their arrival. The probation officer then persuaded Scott's mother to sign an affidavit accusing her son of the unauthorized use of her automobile.[5]

Thereafter, Scott was formally accused of engaging in delinquent conduct. The alleged conduct included, among other things, the operation of a motor vehicle without the consent of the owner, Mrs. Garza. Later, although Mrs. Garza informed the prosecutor (in writing) that she desired to withdraw all charges made against her son, the prosecutor continued to pursue the matter.

At the adjudication hearing, the trial court sustained an objection to the admission of Scott's incriminating statements made to officer Burrows. However, it permitted the officer and others to testify about matters arising from those excluded statements. It also heard evidence from Scott's mother and from his grandfather, Mr. C.F. Mickeal (who resided with the Garzas). While the former admitted that she had signed an affidavit stating that the automobile Scott had driven was her's, she nevertheless conceded that the vehicle actually belonged to her father, Mr. Mickeal. The latter not only confirmed his daughter's statement that he was the record owner, but also testified that everyone in the household had his permission to drive the automobile whenever they so desired.

After both sides finished their presentations, the trial court ruled that Scott had engaged in delinquent conduct by violating § 31.07 of the Texas Penal Code. Specifically, it determined that Scott intentionally and knowingly operated another's motor-propelled vehicle without the effective consent of the owner. TEX. PEN.CODE ANN. § 31.07(a) (Vernon 1994). So too did it enter findings of fact and conclusions of law in support of its ruling. Those findings included the following:

> On June 22, 1997 in Gray County, Texas, Scott Matthew Garza operated a motor vehicle titled to and therefore owned by C.F. Mickeal . . .
>
> Scott . . . did not have the effective consent of C.F. Mickeal at the time to operate the subject vehicle . . .
>
> . . . [Mrs.] Garza had a greater right to the possession of the subject vehicle than Scott . . . and therefore, [she] was an owner of the vehicle as defined in Penal Code 1.07(35) . . .
>
> Scott . . . intentionally and knowingly operated a motor-propelled vehicle owned by [Mrs.] Garza, without her effective consent . . . [and]

3. The officer who made the initial stop of the automobile was not called as a witness at trial. Officer Fawnswa Burrows could simply testify that "another officer [who had made the stop] had detained three juveniles for some other reason. . . ." However, her police report states that she was dispatched in "reference a[sic] burglary."

4. Officer Burrows opined that one was not under arrest until handcuffed.

5. Mrs. Garza testified that she signed the complaint against her son, because the police told her that they were really after Trevor Slater for a rape and burglary charge and needed her complaint to proceed against Slater. Such was confirmed by Mr. Nichols, to the extent that he agreed that the complaint was needed to proceed against Slater. Nichols, however, denied informing Mrs. Garza that her son would not be prosecuted.

Scott ... is a child who has engaged in delinquent conduct.

## Point of Error One

Through his first point, Scott urges that the evidence was both legally and factually insufficient to support the determination that he had engaged in delinquent conduct. This is allegedly so, because the prosecutor not only failed to prove that he "operated" the automobile, but also that he did so without the effective consent of the owner.

### Standard of Review

In reviewing a legal sufficiency point, we must consider only the evidence and inferences tending to support the findings of the juvenile court. *In the Matter of PAS*, 566 S.W.2d 14, 15 (Tex.Civ.App.—Amarillo 1978, no writ). Under this test, evidence and inferences tending to contradict those findings are disregarded. *Id.* Conversely, in assessing whether the evidence is factually sufficient, our focus is not so restricted. The question we must answer in a juvenile case is whether the record, considered as a whole, shows that the State sustained its burden to prove beyond a reasonable doubt that the accused engaged in delinquent conduct. *Id.* at 16. Thus, we must consider all the evidence in making our determination. *Id.*

### Application of Standard

To establish a violation of § 31.07(a) of the Penal Code, several criteria must be satisfied. Not only must the State prove that the accused intentionally and knowingly operated the motor vehicle in question, but also that he did so without the owner's consent. TEX. PEN.CODE ANN. § 31.07(a); *Porras v. State*, 859 S.W.2d 423, 424 (Tex.App.—Dallas 1993, no pet.). Moreover, the *mens rea* alluded to applies to both the elements of operation and consent. That is, it must be shown that the individual intentionally and knowingly oper-

ated the vehicle and did so while knowing that such operation was without the permission of the owner. *McQueen v. State*, 781 S.W.2d 600, 602–603 (Tex.Crim.App.1989). Given such requisites, Scott's attack is two fold. First, he argues that the evidence failed to establish that he operated the automobile in question. Second, he contends that, whether or not he drove the car, he had the consent of the vehicle's true owner to operate it. We address only the latter contention, for it is dispositive of the case. And, in addressing it, we also read the contention as an attack upon the court's finding that such consent was not given.[6]

As alluded to above, the trial court found that Mickeal was the actual owner of the automobile that Scott allegedly operated. Since no one attacked that finding on appeal, it is binding upon us. *Adams v. American Quarter Horse Ass'n*, 583 S.W.2d 828, 833 (Tex.Civ.App.—Amarillo 1979, writ ref'd n.r.e.).

The court also found that Mickeal did not give Scott permission to operate the vehicle "at the time." Yet, nothing of record supports that determination. Nowhere did Mickeal state that Scott could not drive the automobile. Nor could such a finding be reasonably inferred from the testimony of Mickeal or any other witness. Indeed, the sum and substance of the evidence indisputably illustrates that such consent existed. For instance, Mrs. Garza admitted under oath that Mickeal informed her that the car was his and that Scott had his permission to drive it. Furthermore, Mickeal himself testified that *every* family member had permission to drive it. When asked if the authorization included Scott, the vehicle owner unequivocally replied "[y]es, sir." He later followed that response with others clarifying that Scott had his permission to drive the vehicle at "any time"; including four in the morning if he so desired. Since

**6.** Admittedly, Scott did not assert a point of error or issue expressly mentioning the court's finding *vis* Mickeal's consent to operate the vehicle. Yet, nevertheless, we are obligated to liberally construe briefs and the points therein. *Anderson v. Gilbert*, 897 S.W.2d 783, 784 (Tex.1995). This rule coupled with Scott's assertions that 1) "the

evidence was uncontroverted that Appellant's grandfather was the true owner of the vehicle" and 2) his grandfather consented to his operating the vehicle compels us to interpret his point as an attack upon the trial court's finding that he did not have Mickeal's consent "at the time" to operate the automobile.

Mickeal unequivocally gave Scott permission to operate the vehicle at "any time," then it can hardly be said that Scott lacked such permission. Thus, this undisputed evidence coupled with the utter absence of anything suggesting that Mickeal withheld consent from or denied consent to Scott renders legally insupportable the finding that Mickeal did not consent "at the time."

 What we have before us therefore is a dilemma. The vehicle's owner must have withheld or denied consent to the vehicle's operator before the latter can be convicted under § 31.07(a) of the Penal Code. Additionally, the "owner," according to statute, can be either the individual or entity: 1) with title to the property, 2) in possession of the property, or 3) with greater right to possession of the property than the accused. TEX. PEN. CODE ANN. § 1.07(35)(A). Hence, the dilemma before us is whether the trial court could hold that Scott lacked consent, for the purposes of violating § 31.07(a), when someone who was found to have had a greater right to possession of the car (*i.e.*, Mrs. Garza) purportedly withheld consent while an individual with actual title to the property (*i.e.*, Mickeal) granted consent. In answer to this conundrum, we side with Scott, given the basic tenets of property law.

Despite the old saying that "possession is 9/10ths of the law," mere possession and whatever right to the property that comes with mere possession does not grant the possessor rights in the property superior to those of the actual owner. J. CRIBBET, PRINCIPLES OF THE LAW OF PROPERTY 12–13 (1962); R. BOYER, SURVEY OF THE LAW OF PROPERTY 679–80 (1981). In other words, there is a hierarchy of ownership, as reflected both in the common law and § 1.07(35)(a) of the Penal Code. One in possession of a chattel has a greater right to it than one who lacks both possession and title. Yet, one who has title maintains a greater right over the chattel than 1) one who simply has possession and 2) one who has neither possession nor claim of ownership. *Id.* Indeed, it can be said that the title

owner has the greatest rights to the property. With that greatest right comes the power to negate the authority of those with lesser right. Similarly, those who stand in the lesser position lack the power to override or negate the rights of the title owner.[7]

In applying the foregoing to the circumstances before us, we concur with the trial court's finding that Mrs. Garza may have had "greater right to the possession of the vehicle" than Scott. Yet, her right did not supercede the rights and authority of her father, C.F. Mickeal *vis-a-vis* the use of the automobile. While she may have had the authority as a parent to order her minor son not to drive the car, that authority did not negate Mickeal's ability to allow whomever he chose to operate it. Furthermore, since the individual with title to and penultimate authority over the property allowed Scott to use that property, it cannot be said that the boy did so without the consent contemplated by § 31.07(a) of the Penal Code. In defying his mother, by driving the car without a license, or by violating curfew restrictions, he may have violated other laws or engaged in other delinquent conduct, but, he did not contravene § 31.07(a).

Thus, we sustain Scott's first point of error and hold that the evidence is legally insufficient to support the trial court's adjudication that Scott engaged in delinquent conduct.[8] So too, do we reverse the Order of Adjudication and Disposition, render the judgment that the trial court should have rendered, *see* TEX.R.APP. PROC. 43.3, and dismiss with prejudice the Petition Alleging Delinquent Conduct. TEX. FAM.CODE ANN. § 54.03(g) (Vernon 1996).

---

7. Of course, there are exceptions to this truism, such as gaining superior right through adverse possession. Yet, such exceptions are irrelevant here.

8. This relieves us from having to address Scott's second point of error, for its resolution would not further affect the outcome of this appeal.